Chief Justice Bibb
delivered the Opinion of the Court.
On the 15th Nov. 1814, BreckenridgC accepted a deed from the heirs of Richard Jones Waters deceased, for two parcels of land, lot 191, in Louisville, and the point of Bcargrass, for the sum of thirteen hundred dollars; in which deed is recited the circumstances under and by which the heirs and grantors in the deed derive their claim and auj thoritics to make it; of which, these only need be recited: that Daniel Brodhcad, by his indenture of the seventeenth day of September, 1788, and recorded in the clerk’s office of Jefferson, in deed book 3, and pages 64 and 65, did bargain and sell, the said parcel of land to the said Richard Jones Waters; that said Richard J cites Waters died without issue, and intestate, leaving Thomas and Daniel Jennings entitled to one fifth part, and Thomas Jones Waters, Mary Waters, Rachel Mariott, and Ann Mariott, to one *151 íiftíi part each of his real estate, as parceners and heirs of said Richard Jones Waters.
Protestation in the deed a gainst any warranty of the land.
BiH by the appellants, for a rescis, sion of thq contract.
Answers.
The deed, after reciting minutely ail the authorities by which the grantors in the said deed profess to sell and convey, contains a stipulation that the .sale and conveyance intended by the indenture is made, “ upon .the declared and express condition,” that the grantors or either of them, shall not, upon any event, “ or to any any extent whatever, at law or in equity warrant the right or title to sqid lot and piece of ground, or either of them against any persons or person whatever, or he hound to repay or refund any part of said thirteen hundred dollars, or pay damages, for any cause whatever.”
In 1819, Breckenridge.and Maupin exhibited their bill to rescind the contract, and to have their obligations for the purchase money, delivered up; alleging for cause pf complaint, that the grantors, pretending to have an indefeasible title as the heirs of said Richard Jones Waters, sold the said lands; that since the execution of -their obligations, it was discovered that said Richard Jones Waters had left a last will and testament, ‘-‘that the original of said will was found and brought to this slate, and is now, as your orators believe, in the hands of James S. Bate ■or Leonard Jones, that the whole of said will is in flie writing of said Richard Jones Waters, and that he therein declares in substance, that the conveyance or conveyances, made to hinj, Waters, by one Daniel Brodheacl, was done with a view of protecting the said property from the claims of Brodhead’s creditors, and that lie, Waters, had no claim, right pr title to the said lots of ground.” The bill then charges that said Richard Jones Waters had no claim except that derived from Brodhead; that the grantors in said deed to the complainants, “well knowing the above facts have failed and refused to deliver to your orators the said obligations to be .cancelled.”
The defendants who are of full age, and the infants by their guardian, deny that they have any knowledge or belief that said Waters left a will, hut insist that ho died intestate, and demand proof of his *152 testacy; they admit, that long since, the execution-of said obligations, they have heard that Bate and Jones pretend to have a paper purporting to b.e the will of said Waters, hut they have no knowledge of it, and pray that the complainants be required to make due proof of their allegations; they deny any knowledge of the causes or' considerations upon which said Brodhead made the conveyance to said Waters; that finding the deed of record, and verily-believing, as they yet believe, that they are entitled as heirs at law, they sold upon the conditions expressed in the deed, at a price greatly below the re* al value of the land” &c.
Paper, purporting to bo the will of AV liters.
Answer of the gnanlian of the infant <Iefeudants.
ftxtraet from the paper, purporting to ,hc A Voters’ will.
The copy of the paper purporting to be the will of said \\ aters was read by consent, to have the effect as if the original Avas produced, and’ is admitted to be wholly in the hand writing of said Waters.
The answer of the guardian of the infants, denies it to be the last will and testament of Waters, assigns causes why the paper cannot he the will and testament of Waters, nor affect the title of the grantors in said deed, and insists that by the said paper, purporting to be the will, the real estate is devised to the same persons who are his heirs at law.
The paper purporting to be the will of Waters, bears (bite on the 30th day of August, seventeen hundred and eighty-eight; the clause relied on in this will, by the complainants, recites, that lie had taken a bill of sale of all his (Brodhead’s) property, as the said bill will shew,” and taken the partnership stock of goods into his possession, and expects a consignment of other goods, and to make collections for ssiid Brodhead, all of which will be done in sack manner as if the property was his own; that it was dono to prevent some creditors from sacrificing the properly, and to enable Brodhead to pay all his debts; therefore, his executors are required to account fairly will' Brodhead for all sales, to restore his property with all convenient speed, and selecting ¡ill such mentioned bills of sale, after satisfying the, balance that may be found due said Richard, ^ which will he found bv examining a book entitled *153 the diary and memorandum book of Rjcliard Jones Waters & Co. in this book will be found the exact situation of said Daniel Brodhead and myself, and the substance of the contract subsisting between us.”
Decree of the circuit court, dismissing the bill. ' '' ' '
Discussion p( the grounds of the bill.
Discussion of the alleged will.
Upon hearing the judge dismissed the bill: but xyithout prejudice to any future suit; both parties appealed, but the complainants only, are now prosecuting the appeal.
It is evident from the recitals in the deed of bargain and sale to Breckenridge now complained of, that the contract was based upon an inspection of the recorded deed from Brodhead to Waters; the known relationship in which the grantors stood té said Waters; the absence of probate of any will of Waters, and his supposed intestacy as to that prop? erty; the complainants now do not charge any fraud, nor that the defendants then had any knowledge of the paper since produced upon this trial; it is not pretended by the bill that the defendants are not the heirs at law of said Richard Jones Waters; it is not pretended but that if said Waters had title to the estate, it would have descended to the defendants, if said Waters had died intestate. The bill attacks the contract of sale upon the ground that \\ aters did not die intestate; and that the declaration made therein, as to the intent to hinder and delay the creditors of Brodhead, has sapped, undermined and .destroyed the title of Waters as granted and conveyed to him by Brodhead, by the deed of the seventeenth day of September, 1788.
By the paper purporting to be the last will and testament of Waters, there is no devise of his rea} estate to his executors; there is no devise or clause in the will, which passes the title away from the heirs at law, of any real estate whereof Waters was the owner or might devise. The will, as produced, is no obstruction to the title of the heirs at law of Waters as in case of intestacy, provided the clause in relation to the acknowledgment of having received a bill of sale from Brodhead to defeat his creditors, does not so impugn and invalidate the title of Waters to the lots and parcels of land mentioned in the deed of the seventeenth of September, *154 1788, as to prevent the heirs at law from taking the lands by inheritance from their ancestor.
Held that the legal title to the land in csoutroversy, descended to the heirs of Waters, notwithstanding the alleged will.
The purchaser having made a chancingbargain for the land, cannot have a rescission by show ing the title is doubtfii', or that there was some fraud practiced on him.
It is clear that this recital is the will made in August, 1788, that Waters had received a bill of sale of all Brodhead’s property, cannot, be applied to the conveyance made by Brodhead to Waters, in the following month of September. The bill of sale bad been made before August, 1788, which is alluded to in the will; and wliai property was included in that bill of sale, “ the said bill of sale will shew,” as the testator said: but it is not produced: neither is the agreement between said Waters and Brodhead referred to by the will, as being in “the diary or memorandum hook,” produced. So far as wé can collect from the will itself, the bill of sale was of personal property — the executors were to restore such as was unsold, the balance due Waters however, to be first satisfied. No real estate was devised to the executors; by the will they are not vested with the legal title to the real estate, nor authorized to sell, or to convey it. The legal title, therefore, which was conveyed to Waters by the deed of Brodhead of September, 1788, did pass by descent to the heirs at law of said Waters; and so far as can be collected from the exhibits and proofs in this cause,'it has descended to the heirs at law, not infected by any acknowledgment contained or referred to in the will of August, 1788.
The bill does not pretend that the real estate has-been devised away from the heirs at law, but the intent of the parties to the deed of 1788, is supposed to have been fraudulent, aiid a contrivance between them to delay, hinder and defeat Brodhead’s creditors. Suppose it were so. There is no pretence for saying that the defendants covenanted that tlieir ancestor had a sure and indefeasible title by virtue of that conveyance, nor that they had inherited a sure and indefeasible title. On the contrary, it is clear. that the complainant saw the deed of 1788 of record, and believing Waters to have died intestate as to his real óslale, lie purchased from the heirs without warranty or assurance of any kind, risqning the title upon (he facts ."fated in the deed from the de» *155 iendants to the complainants; being a risque agreed to be undertaken by the complainants as to the title of defendants — a catching bargain. The intestacy is true in the sense in which it was asserted; the facts upon which the bargain was made are not changed, nor the risque increased, by producing the paper purporting to be the will. That will bears date in 1788, and the facts had then transpired; the deed under which the complainant purchased of the heirs-was made in 1788 — although thirty years and more, had expired before bill filed, yet that deed remains unimpeached. The hill does not allege an eviction, nor any claim whatever asserted, adverse to the deed of 1788, upon which the contract was based. The complainants apprehend a defect of title, but no foundation is shown for that, apprehension, much less for setting aside a contract which upon its face was a catching bargain on the part of the purchasers upon the facts known. There has been neither a suppression of the truth, nor a suggestion of falsehood, the complainants agreed to run the risqe of paramount claims; they must abide by their contract.
Grayson and Denny^ for appellants; Guthrie, for appellee.
There is no error in the decree, to the prejudice of the complainants, the present appellants; and they must pay to the appellees their costs in this behalf expended.